**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Derek Sprouse,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:24cv327 (RDA/WBP)** |
| | ) | |
| **VA Director of Prisons,** | ) | |
|     **Respondent.** | ) | |

<u>MEMORANDUM OPINION</u>

Petitioner Derek Sprouse ("Petitioner" or "Sprouse"), a Virginia prisoner proceeding *pro se,* filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. The petition failed to comply with Local Civil Rule 83 and Petitioner was then directed to file an amended petition using the proper form. Dkt. No. 4. He complied. Dkt. No. 5.  Thereafter, Respondent filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits.  Dkt. Nos. 16–19. Sprouse has responded. Dkt. No. 30.

After a review of the materials, Respondent was directed to amend his brief.  Dkt. 31.  On November 18, 2024, in accordance with *Milla v. Brown*, 109 F.4th 222 (4th Cir. 2024), the Court advised Sprouse of his rights to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. No. 33. Sprouse filed a response on December 11, 2024, Dkt. No. 34, and the matter is ripe for disposition. For the reasons that follow, Respondent's Motion to Dismiss must be granted, and the petition dismissed with prejudice.

**I. Procedural History**

Sprouse is in custody pursuant to the March 14, 2018 judgment order of the Circuit Court of Spotsylvania County. After a four-day jury trial, he was convicted on January 25, 2018 of robbery, in violation of Virginia Code § 18.2-58; aggravated malicious wounding, in violation of Virginia Code § 18.2-51.2; and two counts of the use of a firearm in the commission of a felony

in violation of Virginia Code § 18.2-53.1. Sprouse waived his right to a pre-sentence report and

the circuit court sentenced him, in accordance with the sentences fixed by the jury, to life in prison

for robbery, life in prison for aggravated malicious wounding, three years in prison for his first use

of a firearm conviction, and five years in prison for the second use of a firearm (second or

subsequent offense) conviction. Dkt. No. 32-1.

Sprouse, by counsel, filed a petition for appeal in the Court of Appeals of Virginia that

raised three assignments of error.

I.    "The trial court erred in not granting Appellant's first motion for a mistrial
      when his mother had an emotional outburst during her testimony which
      prejudiced the jury."

II.   "The trial court erred in not granting Appellant's second motion for a
      mistrial when the Commonwealth improperly commented on [his] exercise
      of his Fifth Amendment right not to testify during closing arguments.

III.  "The trial court erred in finding the evidence sufficient to convict
      [Petitioner] of the charges when the Commonwealth's only evidence as to
      identity was unreliable in-court identifications and Appellant presented
      evidence that other people had been identified as the perpetrator."

Dkt. No. 32-3 at 6. The Court of Appeals held the trial court did not abuse its discretion by denying

the motions for mistrials, and that the evidence was sufficient to sustain his convictions. Dkt. No.

32- 1. The Court of Appeals summarized the evidence as follows:

On March 8, 2014, Kelly Wood was working alone at a convenience store when a
man came to the counter and asked for a tobacco product. Wood turned around to
retrieve the item and then heard a "big pop." Wood "panicked" and ran towards the
door. Wood saw that the man had taken a case of Ephedrine from the counter and
was also carrying a gun. From just feet away, the man shot Wood in the face and
then left the store. Wood observed a green or teal colored car in the parking lot.
After the shooter left, Wood called for emergency help. Wood suffered extensive
injuries as a result of the shooting.

Wood identified the [Petitioner] in court as the man who shot her. Wood met with
an FBI sketch artist in May 2014, and he produced a drawing based upon Wood's
description. At trial, Wood explained that the "goatee and the eyes and the
expression" in the sketch were accurate and that the picture looked like the man
who shot her. In October 2014, Wood viewed a photo lineup of suspects that did
not include [Petitioner]. After [Petitioner]'s arrest, Wood saw a picture of
[Petitioner] in the media and her "first thought was it was him."

2

Steven Van Amerongen was at the convenience store on the night of the shooting and saw a green Pontiac car parked in a dark area of the parking lot with its lights on. Van Amerongen explained that "[i]t was almost as if they were waiting for him to leave." Detective Frank Corona testified that Linda Lou Hall, [Petitioner]'s mother-in-law, owned a 1995 green Pontiac at the time of the shooting. Corona learned that [Petitioner] had access to it.

Corona showed the store's security video—which showed the incident—to twelve witnesses, including multiple members of [Petitioner]'s family. At trial, these witnesses identified [Petitioner] as the shooter from the video. They gave testimony explaining how they recognized [Petitioner] from his clothing, gait, mannerisms, facial expression(s), and goatee—all of which were visible in the video. [Petitioner]'s mother [Brenda Perkins] was among these witnesses, and she began to cry when she saw her son in the footage. Perkins specifically identified the jacket the shooter was wearing in the video and explained that she had purchased the garment for [Petitioner].

*      *      *      *

Here, Wood identified [Petitioner] with a high degree of certainty. She observed [Petitioner] at close range in a well-lighted store. [Petitioner] was the only customer in the store at the time. Wood's description of her assailant closely matched the man depicted in the security video. Wood immediately recognized [Petitioner] as the shooter when she saw his photograph after his arrest. Additionally, Wood's identification of [Petitioner] was corroborated by the twelve witnesses who identified [Petitioner] from the store video, including [Petitioner]'s own mother, and the other circumstantial evidence presented at trial. The jury viewed the store video.

Dkt. No. 32-2 at 4-7. The petition was denied on December 19, 2018.

Sprouse, by counsel, filed an appeal in the Supreme Court of Virginia that raised the same three assignments of error regarding the denial of the motions for mistrials and sufficiency of the evidence.[1] Dkt. No. 17-4 at 8-9. The Supreme Court of Virginia refused the petition on July 10, 2019. Dkt. No. 32-4.

Petitioner executed a state petition for a writ of habeas corpus on May 18, 2021. The petition was filed in the Supreme Court of Virginia on May 21, 2021, and raised seven claims.

Claim a(i):    Due Process violation as the Commonwealth and Detective Corona violated petitioner's Due Process rights "by failing to conduct a

---

[1] Each assignment of error in his petition also asserted that the Court of Appeals of Virginia erred in affirming the trial court. Dkt. No. 17-4 at 8-9.

photo lineup with the victim prior to the indictment of" Petitioner.

Claim a(ii):   Due Process violation through "improper indictment" as Detective Corona alluded that there was evidence that petitioner was the shooter and wore gloves.

Claim b:   Petitioner's Fifth Amendment rights were violated by the trial court's refusal to grant a mistrial after the prosecutor, out of context, referred to a statement Petitioner had made on a phone call as "unrefuted."

Claim c(i):   Counsel was ineffective because he "failed to point out to the jury the direct discrepancies in the physical evidence," "*i.e.*, the video of the crime," and "the sole identifier's [victim's] testimony, " which was inconsistent with the video of the crime, which would have impeached the victim's "incredible testimony"

Claim c(ii):   Counsel was ineffective because he would not allow Petitioner to see affidavits by deputies identifying the perpetrator as an ex-police officer based upon the perpetrator's shooting stance, walk, and beverage preference.[2]

Claim d(i):   Pre-trial publicity. Statements from various internet websites and the newspaper's website show that the outcome of the trial would result in "an extreme sentence" whether Petitioner was guilty or not. This, plus the fact that Petitioner received two life sentences shows that the trial court erred by not granting a change in venue.

Claim e(i):   Ineffective assistance of appellate counsel, as counsel described events that never took place in petitioner's appeal and failed to challenge the incredibility of the Commonwealth's direct evidence.

Dkt. No. 32-6 at 9-13. On October 25, 2021, the Supreme Court of Virginia dismissed the petition

as untimely because it "was not filed within one year from the July 10, 2019 final disposition of

petitioner's direct appeal." Dkt. No. 32-5 (citing Virginia Code § 8.01-654(A)(2)).

On June 4, 2021, Petitioner, proceeding *pro se*, filed a petition for a writ of mandamus in

this Court, seeking an order directing the Supreme Court of Virginia "to issue an opinion setting

forth the 'reasons for denial of [his] appeal.'" Dkt. No. 32-8 at 1 (*Sprouse v. Commonwealth of

Virginia*, No. 1:21cv670 (E.D. Va. Nov. 5, 2021)). This Court dismissed the petition with

---

[2] The "affidavits" attached to the federal petition are portions of police reports, but do not indicate that the reports were sworn to in any manner. Dkt. No. 5 at 44, 46, 48, 50, and 52. The documents are not affidavits and will be referred to as police reports.

prejudice, *id.*, and the Fourth Circuit affirmed that dismissal on April 1, 2022. *Sprouse v. Virginia*, 2022 WL 989410, *1 (4th Cir. Apr. 1, 2022); *Sprouse*, No. 1:21cv670, Dkt. No. 8.

On February 20, 2024, Petitioner, proceeding *pro se*, executed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petition was marked received by his institution of confinement on February 23, 2024, and the clerk received and filed it on February 26, 2024. Dkt. No. 1, 1-1, 1-2. On March 8, 2024, the Court found the petition deficient and granted Petitioner leave to file an amended petition. Sprouse executed an amended petition on April 4, 2024, which was filed on April 9, 2024, Dkt. No. 5, and raises the following claims:

I.    "Improper indictment." "Detective Frank Corona gave false testimony to the grand jury and [al]luded to a non-existent drug conviction" and "made improper comments concerning the gender specific names of [Petitioner's] children were made due to the questions of [Petitioner's] sexual identity." *Id.* at 9.

II.   Ineffective assistance of counsel. Counsel failed to bring "up the discrepancy" between victim's testimony regarding the crimes and the video of the crimes. *Id.* at 11, 13.

III.  Ineffective assistance of counsel. Counsel did not make exculpatory evidence available to Petitioner before trial. *Id.* at 14.

IV.   The trial court erred by not granting a mistrial after the prosecutor's comment on Petitioner exercising his Fifth Amendment right to not testify. *Id.* at 16.

V.    The pretrial publicity surrounding petitioner's trial case was "so defamatory" as to prevent a fair trial. *Id.* at 22.

VI.   Constructive ineffective assistance of counsel due to the detective's failure to show a photo lineup with petitioner in it prior to securing an indictment created a "prejudiced identification" by the victim "from a news article stating petitioner was indicted for the crime," which resulted in such a "flawed" trial that "prejudice and ineffectiveness can be presumed". *Id.* at 24.

## II. Statute of Limitations

Under the Anti-terrorism Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the Supreme Court of the United States recognizes the constitutional right asserted; or (4) the factual predicate of the claim

5

could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

Sprouse's petition is untimely under § 2244(d)(1)(A). His convictions became final on July 10, 2019 when the Supreme Court of Virginia refused his petition for appeal, which ended his direct appeal. The federal statute of limitations began to run 90 days later on Tuesday, October 8, 2019, when his time for seeking further direct review in the Supreme Court of the United States expired. *Harris v. Hutchinson*, 209 F.3d 325, 328 n. 1 (4th Cir. 2000). Hence, absent tolling, his federal statute of limitations lapsed on Thursday, October 8, 2020. The federal petition was filed, at the earliest, on February 20, 2024—over three years after the statute of limitations had lapsed.

*A. Statutory Tolling*

Under AEDPA, a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. 28 U.S.C. § 2244(d)(1)(A). In calculating the one-year period, the Court excludes the time during which any properly filed state collateral proceedings were pending. *See* 28 U.S.C. § 2244(d)(2); *see also Pace*, 544 U.S. at 417 (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Here, Sprouse filed his state habeas petition, at the earliest, on May 18, 2021, which is 222 days after the federal statute of limitations had already lapsed on October 8, 2020. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (*i.e.* restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of

6

limitations."); *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired. In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired."); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (where a state court application for post-conviction relief is filed after the one-year statute of limitations has expired, it does not toll the statute because no time remains to be tolled).³ Accordingly, as there was no state petition filed before the expiration of the federal statute of limitations, and, therefore, there is no basis for statutory tolling in this case.

*B. Equitable Tolling*

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427–28 (8th Cir. 2007) (citation omitted). The extraordinary circumstance component requires Petitioner establish that the circumstance that prevented him from complying with a deadline was "an 'external obstacle' to timely filing, *i.e.*, that 'the circumstances that caused [his] delay must have been beyond [his] control.'" *Menominee Indian Tribe of Wis. v. United States*,

---

³ Further, the Supreme Court of Virginia determined that the state petition was barred as untimely pursuant to the state habeas statute of limitations. The untimely state petition could not serve to toll the federal statute of limitations even if it had not lapsed. *See Pace*, 544 U.S. at 417 (holding petitioner was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) where state habeas petition was dismissed as untimely); *Artuz*, 531 U.S. at 8 (holding a state collateral proceeding is not "properly filed" for purposes of tolling the federal limitations period if it is filed untimely).

577 U.S. 250, 256 (2016). Lastly, a petitioner is obliged to specify the steps he took in diligently pursuing his federal claim, *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001), and he must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). To be sure, the party seeking equitable tolling must "show diligent pursuit of his claim '*throughout the period he seeks to toll.*'" *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)). Indeed, equitable tolling is available only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

Sprouse asserts five reasons to justify equitable tolling: (1) jurisdictional error because the indictment was "obtained under false pretenses" due to the fact that "no affidavit is on file pertaining to probable cause" and he was transferred out of state for two years after his trial; (2) he has a "disabling brain injury" and "subsequent traumas"; (3) when he was transferred back to Virginia from North Carolina he did not have "access to legal resources" and "VA legal material" during the "two years" after his trial while he was held in North Carolina; (4) he was returned to Virginia custody during the pandemic/COVID and did not have any access to legal resources; and (5) he is actually innocent because he did not shoot the clerk. Dkt. Nos. 5 at 30-32; 30 at 2.[4]

---

[4] Sprouse was convicted of robbery with a dangerous weapon in Cleveland County, North Carolina and began serving that sentence in North Carolina on September 2, 2015. https://www.dac.nc.gov/dac-services/criminal-offender-searches (North Carolina Department of Adult Correction, Information and Services, Offender Public Information Search/Offender Locator, search "Sprouse, Derek") (last viewed Feb. 6, 2025) (hereinafter "*Inmate Locator*"). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); *see, e.g., Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online). North

*Lack of Jurisdiction.* Sprouse argues that the Circuit Court lacked jurisdiction to try him because his indictment was obtained by false pretenses—specifically, that the record does not contain a probable cause affidavit. In Virginia, however, an indictment is valid if it is returned by the grand jury and the name of the witness who provided testimony to the grand jury is included at the foot of the indictment. *See* Va. Code Ann. § 19.2-202. Sprouse's indictments were returned as "True Bills," signed by the foreperson, and the name of Detective F. Corona, Spotsylvania Sheriff's Office, is affixed at the foot of each indictment as the witness. *See Commonwealth v. Sprouse*, Case Nos. CR15-837-00, -838-00, -839-00; and -840-00 at 1-4 (hereinafter "CCT at __"). The indictments therefore complied with Virginia Code § 19.2-202.

Additionally, this alleged defect does not state a claim of constitutional magnitude. "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992) (quoting *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

> In *Duncan v. Louisiana*, 391 U.S. 145 (1968), the Court held that because trial by jury in criminal cases under the Sixth Amendment is "fundamental to the American scheme of justice," *id.*, at 149, such a right was guaranteed to defendants in state courts by the Fourteenth Amendment, but the Court has never held that federal concepts of a "grand jury," binding on the federal courts under the Fifth Amendment, are obligatory for the States.

*Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) (citing *Hurtado v. California*, 110 U.S. 516, 538 (1884)). Claims based on alleged defects in state grand jury proceedings are, therefore, not reviewable in federal habeas unless they present an independent federal constitutional claim. *See Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir.1989);[5] *cf. Wainwright v. Goode*, 464 U.S. 78, 83 (1983)

---

Carolina released him to Virginia on August 14, 2020, which Sprouse admitted by affidavit in his state habeas proceeding. *See Inmate Locator; Sprouse v. Clarke*, Record No. 210618 at 2 (hereinafter, "Rec. 210618").

[5] The Due Process Clause guarantees a defendant "the 'right to reasonable notice of a charge against him, and an opportunity to be heard [in] his defense ....'" *Barbe v. McBride*, 477 F. App'x 49, 51 (4th Cir. 2012) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)). Sprouse does not allege that he lacked the required notice or that there was

("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Since the Fifth Amendment's requirement of indictment by a grand jury does not apply to the states, *Wilson v. Lindler*, 8 F.3d 173, 174 (4th Cir. 1993) *(en banc)*; *see also Branzburg v. Hayes*, 408 U.S. 665, 688 n. 25 (1972) (noting that the "grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment") (citation omitted), any possible irregularity or defect would involve an error of state law.[6] Finally, the argument's lack of merit aside, any irregularity or defect with Sprouse's indictments was cured by his convictions. *United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation"); *United States v. Masiarczyk*, 1 F. App'x 199, 213-14 (4th Cir. 2001) (concluding that, "even if [the agent's] grand jury testimony was inaccurate or false, that falsity provides no basis for reversing [the defendants'] convictions" and holding that "because the petit jury subsequently convicted [the defendants] beyond a reasonable doubt, any error in their grand jury proceedings is harmless"); *see Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal [were] rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral

---

no probable cause to indict him. Moreover, any such claim would be baseless given the evidence introduced during his trial. *See, supra* at 2-3.

   [6] The Fourth Circuit has previously rejected a habeas petitioner's assertion that the state court lacked jurisdiction to convict him finding the issue of jurisdiction was one of state law. *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998) (citing *Wills v. Egeler*, 532 F.2d 1058 (6th Cir. 1976); *Roche v. Scully*, 739 F.2d 739, 741 (2d Cir. 1984)). The *Wright* Court, recognized that *Wills* held that a "determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Id.* at 1059. It further recognized that *Roche* held that "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law." *Id.* The determination of a state court's jurisdiction involves a matter of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state–court determinations on state–law questions); *see also Stumpf v. Alaska*, 78 F. App'x 19, 21 (9th Cir. 2003) ("the introduction of grand jury testimony that was later determined to be perjury did not violate Stumpf's right to due process. Because the right to a grand jury has not been applied to the states via the Fourteenth Amendment, Stumpf's Fifth Amendment challenge to the grand jury proceedings does not raise a question of federal law and is not cognizable on habeas review.") (citation omitted)).

attack brought in a federal court."). Sprouse's lack of jurisdiction argument therefore has no merit and does not warrant tolling.

*Brain Injury, Access to Materials, and Pandemic/COVID.* For purposes of this motion only, the Court assumes that these three of Sprouse's alleged reasons for equitable tolling are valid. But, even if they are valid, they would only toll the statute of limitations through May 18, 2021 when he filed his state habeas petition.[7] After that point in time, Sprouse had either formulated almost all of the claims he has raised in federal § 2254 petition; or he had amassed all the facts to support his federal claims. Sprouse's own affidavit in state habeas essentially admits the alleged impediments did not exist after he filed his state petition.

In state habeas, Sprouse filed an "Affidavit in support of timeliness of petition for writ of habeas corpus," that relied on the same tolling arguments for timeliness that he relies upon in this matter. The affidavit was dated and sworn to before a notary on May 18, 2021, and avers that his state habeas petition was "as timely as can be expected" given his confinement in North Carolina and the lockdowns after he returned to Virginia. Rec. 210618 at 2. His arguments for tolling, however, do not warrant tolling in federal habeas because they did not *prevent* Sprouse from timely filing his federal claims.  This is evident because Sprouse's six federal claims mirror his state habeas claims and/or the facts he alleged in his state habeas petition in support of his state habeas claims which he was able to file by May 18, 2021.[8] Ergo, equitable tolling was not warranted after

---

[7] Specifically, his assertions that he has a "disabling brain injury" and "subsequent traumas;" he was transferred back to Virginia from North Carolina and did not have "access to legal resources" and "VA legal material" for the two years after his trial while he was held in North Carolina; and he was returned to Virginia custody during the pandemic/COVID and he did not have any access to legal resources. Dkt. Nos. 5 at 30-32; 30.

[8] Federal Claim I alleges an improper indictment because probable cause affidavits were not presented to the grand jury; and is, in essence, the same as state habeas claim (a)(ii). Sprouse admits in his federal petition that he raised Claim I in his state habeas petition. Dkt. No. 5 at 9.

Federal Claim II alleges ineffective assistance for failing to bring up discrepancies between the victim's testimony and the video; and is, in essence, the same as state habeas claim (c)(i). Sprouse admits in his federal petition that he raised Claim II in his state habeas petition. *Id.* at 13.

he filed his state habeas petition on May 18, 2021 because he had the necessary facts for his federal claims.[9]

Further, the circumstance that prevents a federal habeas from being timely filed will not "toll the statute of limitations indefinitely." *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003). As noted, Sprouse bears the burden of demonstrating "the necessary causal link between" his alleged extraordinary circumstances "and the untimeliness" of the habeas action filed in federal court. *United States v. Buckles*, 647 F.3d 883, 890 (9th Cir. 2011). Where additional delay in filing a federal habeas action "is not attributable to" the extraordinary circumstances, equitable tolling does not apply. *Id.*; *see Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not

---

Federal Claim III alleges counsel was ineffective because he did provide the deputies affidavits before trial; and is, in essence, the same as state habeas claim (c)(ii). Sprouse admits in his federal petition that he raised Claim III in his state habeas petition. *Id.* at 16. As observed previously, the "affidavits" attached to the federal petition are portions of police reports, and are not sworn to in any manner. *Id.* at 44, 46, 48, 50, and 52.

Federal Claim IV alleges the trial court erred by not granting his motion for a mistrial based on the prosecutor's comment on Sprouse's Fifth Amendment right not to testify; and is, in essence, the same as state habeas claim (b) (also raised on direct appeal as assignment of error II). Sprouse admits in his federal petition that he raised Claim IV in his state habeas petition. *Id.* at 18.

Federal Claim V alleges prejudicial pre-trial publicity on websites for newspapers (*e.g.*, "Guilty, flip the switch" and ("Either way, I hope this trash never sees the light of day") "prevent[ed] a fair trial"; and is, in essence, the same as state habeas claim (d) that included the same statements relied upon in his federal habeas (*e.g.*, ""Guilty, flip the switch" and ("Either way, I hope this trash never sees the light of day"). Sprouse admits in his federal petition that he raised Claim V in his state habeas petition. *Id.* at 22.

Federal Claim VI alleges ineffective because counsel due to his attorneys' failure to challenge the prejudicial identification used to obtain the indictment from a newspaper article and not a photo lineup; and is based, in large part, upon the substantive state habeas claim (a)(i), which raised a deprivation of due process claim instead of an ineffective assistance of counsel claim. Even though he did not raise an ineffective assistance of counsel claim in state court, the summary of facts alleged in his state habeas petition, Rec. 210618 at 10-11, is, in essence, the same as the "supporting facts" for his allegation of ineffective assistance of counsel in his federal petition. Dkt. No. 5 at 24, 26. The facts in the state and federal habeas petitions allege the detective investigating the matter failed to show the victim a photo-lineup that included a picture of Sprouse to the victim before the grand jury returned the indictments.

[9] *See Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) ("[T]o qualify for equitable tolling, [petitioner] had to demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely habeas petition."); *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (stating obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well," and noting that 21 months elapsed before the circumstances that purportedly created the extraordinary circumstance arose); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (refusing to apply equitable tolling where "petitioner s[a]t on his rights for years before he filed his [state habeas] petition" and "sat on them for five more months after" the denial of state habeas relief became final).

exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."); *Harper*, 648 F.3d at 139 ("equitable tolling should be . . . circumscribed to the period for which diligence and causation are established"). Here, by his own admissions in the state habeas petition, the claims and the necessary facts to support Sprouse's federal § 2254 claims were available on May 18, 2021.

Moreover, on June 4, 2021, just over two weeks after he filed his state habeas petition, Sprouse filed a petition for a writ of mandamus in this Court, which was denied on November 5, 2021. The Fourth Circuit dismissed Sprouse's appeal on April 1, 2022. *See, supra* at 4. Sprouse waited approximately one year and eight plus months more before he filed his federal § 2254 petition—which further demonstrates his lack of diligence in pursuing federal habeas relief.[10]

In short, nothing in the record indicates that Sprouse was prevented from filing his federal petition on May 18, 2021 when he filed his state petition. To be sure, federal habeas jurisprudence provides a solution for such potential federal statute of limitations dilemmas. Under *Rhines v. Weber*, 544 U.S. 269, 278 (2005), Sprouse could have filed for habeas relief in both state and federal courts at the same time, and filed for a stay and abey order when he filed his federal habeas petition in order to pause the federal proceeding while he sought to exhaust his claim in state court. Sprouse's failure to seek such a stay is just additional evidence of his lack of diligence. Because Sprouse was not diligent in pursuing his rights, he is not entitled to equitable tolling for the time during which his state petition was pending. *See Pace*, 544 U.S. at 418 (rejecting petitioner's claim that he was entitled to equitable tolling for the time during which his untimely state petition was

---

[10] "[E]quity is not intended for those who sleep on their rights." *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).

pending because petitioner sat on his rights). To the extent he may claim ignorance of the law, the Fourth Circuit has explained that even if a *pro se* petitioner "did not understand how the statute of limitations operated in his case . . . ignorance of the law is not a basis for equitable tolling." *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

In sum, whatever extraordinary circumstances (brain injury, lack of access to materials, or pandemic/COVID restrictions) Sprouse encountered prior to May 18, 2021, those matters or issues had dissipated or been overcome because Sprouse assembled, by his own admission, the facts necessary to support his claims and filed his state habeas petition on that date. As further evidence of his lack of diligence, Sprouse waited 848 days after his state habeas petition was dismissed on June 25, 2021 before he filed his federal habeas petition. The extraordinary circumstances that form the basis of his argument for equitable tolling neither *prevented* him from filing his federal petition in a timely fashion nor were they beyond his control. *Menominee Indian Tribe of Wis.*, 577 U.S. at 256 (the extraordinary circumstance component of equitable tolling requires a petitioner establish that the circumstance that prevented him from complying with a deadline must have been "an 'external obstacle' to timely filing, *i.e.*, that 'the circumstances that caused [his] delay must have been beyond [his] control'"); *Pace*, 544 U.S. at 418 (equitable tolling requires a petitioner demonstrate both that he had been pursuing his rights diligently, and that some extraordinary circumstance stood in his way that prevented timely filing). Sprouse is therefore not entitled to equitable tolling.

*Actual Innocence.* Sprouse's actual innocence argument is premised on what he characterizes as "exculpatory evidence," which is a police report (that he refers to as an affidavit) in which the report identified an "ex-deputy . . . 100%" as the perpetrator, discrepancies in testimony, and the video. Dkt. No. 30 at 3. Sprouse argues that if police report about the "ex-

deputy" had been made known to the jury "no reasonable juror would find Petitioner guilty beyond a reasonable doubt." *Id.* Sprouse attached portions of the police reports to his state mandamus petition, and the Respondent attached the state mandamus petition as an exhibit. *See* Dkt. No. 32-7 at 11-15.

A "convincing " or "credible" claim of actual innocence may excuse a petitioner's untimely filing of his federal habeas petition, *McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013); however "claims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under *Schlup* is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

To prevail on an actual innocence claim, a petitioner must present new evidence showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327 (emphasis added). The evidence Sprouse proffers, however, is not "new reliable evidence" demonstrating a colorable claim of actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010). Instead, it was evidence that: (i) he knew about before trial; and (ii) his attorneys actually used at trial.

The record establishes that Sprouse was aware of the police reports before trial because he references them in a March 17, 2018 *pro se* motion to dismiss that he filed in the Circuit Court in which he argued the indictments should be dismissed. CCT at 98-99. Sprouse states in that motion

15

that he had "received information leading [him] to believe the 'actual perpetrator' may have been an ex-deputy." *Id.* at 99. Sprouse avers in his state habeas petition, dated May 18, 2021, that his attorneys were ineffective because they did not allow him "to see an affidavit showing that Travis Nutter a deputy who saw the video stated he was '100%' sure it was his ex-partner." Dkt. No. 32-6 at 11. The same police report also stated that "a Sgt. Botkins also stated he was '100%' sure it was the same individual." *Id.* It is evident not only from Sprouse's pleadings that he has known about this evidence for a long time, but it is also evident that his attorneys not only had the police report and the record establishes that they used the information in the police reports because they called Nutter and Botkins as defense witnesses at trial. Having the live witnesses in court renders the police reports, at best, hearsay.[11]

Sprouse's attorneys announced during opening statements that this case was one of "mistaken identity," and named the person referred to in the police reports, Derek Childress. (1/22/18 Tr. at 143, 152). On direct, Lt. Travis Nutter, Caroline County Sherriff's Department admitted that he had told the investigators from Spotsylvania County that he was "one hundred percent" sure the photos from the video were Derek Childress, an ex-deputy who had been his partner for seven years. (1/25/18 Tr. at 28, 31, 35, 39). First Sgt. Kevin Botkin, Virgina State Police, testified that he had worked with Childress for several years on joint task forces and that

---

[11] The police reports were not sworn statements, much less sworn to by Nutter and/or Botkin, and were written by Det. James Wright, III on "07/24/2014," and Officer Mills Kelly on "09/23/2014." Dkt. No. 32-7 at 11-15. As such they were hearsay and would have been inadmissible unless they could be used to impeach Nutter or Botkin; or if either Nutter or Botkin were somehow unavailable. *See Sapp v. Commonwealth*, 559 S.E.2d 645, 650 (Va. 2002) ("The proponent of hearsay testimony of an unavailable witness must demonstrate a 'sufficient reason' for not producing the live testimony."); *Commercial Distributors, Inc. Blankenship*, 397 S.E.2d 840, 847 (1990) ("Witnesses may be impeached by proof of prior inconsistent statements, but Virginia adheres to the common-law rule that such statements are inadmissible hearsay if offered to prove the truth of their content. When such statements are offered to impeach a witness, the opposing party is entitled, upon request, to a cautionary instruction advising the jury that the statements are to be considered only insofar as they may affect the credibility of the witness, and may not be considered as proof of the truth of their content.") (citing *Pugh v. Commonwealth*, 355 S.E.2d 591, 595 (Va. 1987)). As noted in the text above, and evidenced by the record, Nutter and Botkin were both available for trial and each admitted in their testimony that they had previously identified Childress as the perpetrator.

16

after initially not identifying the perpetrator from fliers shared by law enforcement agencies in the area, he identified the person in the video as Childress. (*Id.* at 7-8, 12). In short this evidence is not "new evidence," to the contrary, it was actually evidence presented at trial—evidence that created a dispute of fact, *see supra* at 2-3, with the testimony of the victim and twelve other witnesses (including Sprouse's own mother)—which the jury resolved by finding Sprouse guilty. The police reports are not new evidence, and are cumulative evidence, at best, of what trial counsel introduced through the actual witnesses. *See Bannister v. Delo*, 100 F.3d 610, 618 (8th Cir. 1996) ("putting a different spin on evidence that was presented to a jury does not satisfy the requirements set forth in *Schlup*"); *see also Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013) (the "*Schlup* gateway" is not available "where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt."). The police reports therefore do not establish Sprouse's actual innocence or warrant equitable tolling. Accordingly, the petition will be dismissed as untimely.

### IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss, Dkt. No. 16, must be granted, and the petition will be dismissed as untimely by an order to be issued alongside this Memorandum Opinion.[12]

Entered this ___13___ day of __February__, 2025                    /s/ _____

Alexandria, Virginia                                                               Rossie D. Alston, Jr.
                                                                                            United States District Judge

---

[12] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.